**FIANZA CIA NAV. S. A., a corporation, and Frachten Treuhand, G.m.b.H., a corporation, Plaintiffs,**

v.

**William BENZ et al., Defendants.**

**Civ. No. 10101.**

United States District Court
D. Oregon.

Dec. 4, 1958.

John D. Mosser and Robert C. Shoemaker, Jr., Portland, Or., for plaintiffs.

Richard R. Carney and Tolbert H. McCarroll, Portland, Or., for defendants.

EAST, District Judge.

As the record shows, this Court completed taking of testimony and the receipt of evidence and that it heard the statements of counsel in connection with the matter of Fianza CIA Nav. S.A., a corporation, whom I understand to be a Panama corporation, and the other plaintiff, Frachten Treuhand, G.m.b.H., which I understand to be a corporation of Germany, against various unions, officials

of the unions and members of the unions. There has been read into the record the parties who had been served at the time of the hearing, and plaintiff elected to go forward against those defendants who had been served. So the Court can only deal with reference to those defendants whom the record shows were served and counsel for the defendants having read in the record that they represented those particular people

The Court was unresolved at the close of the hearing yesterday afternoon, late in the afternoon, and determined that it should have the advantage of the evening time to review the opinion which was recently entered by Judge Bryan in New York, Afran Transport Co. v. National Maritime Union, D.C., 169 F.Supp. 416.

During the course of the trial there was considerable discussion among counsel and the Court as to the exact status of the plaintiffs as either owners, operators or charterers of the vessel involved, being the—I believe she is the Motorship Capetan Yemelos which is presently in this port, Portland, docked at a private dock. And she has been unserved and unserviced by any servicing maritime agency since the time there appeared in the vicinity of the dock certain members of the unions which have been served and are parties to this proceeding, who carried banners to the effect that they were protesting the practice which they claimed that this vessel and her owners and charterers were engaged in in attempting to develop policies of undermining and lowering the standard of wages and working conditions of American seamen.

Great stress has been placed by the defendants upon the decision of Judge Bryan of New York, wherein he held that a labor dispute existed and that his court did not have jurisdiction to enter injunctive relief pendente lite. So this Court questioned counsel and tried to be attentive to the evidence produced as to determining whether or not the factual situation presented here in Portland was the same as the situation in New York.

Now, I read from Page 10 of the transcript of Judge Bryan's opinion wherein it states:

"The defendants"—being unions and members of the unions—"describe the 'flags of convenience' or 'flags of necessity' which these ships fly as 'runaway flags' and assert that they are a device by the American interests who control the plaintiff corporations to avoid the necessity of entering into American collective bargaining agreements with the crews of such vessels or the payment of American seamen's wages." 169 F.Supp. 420.

Now, that was the premise upon which Judge Bryan proceeded. There were multiple plaintiffs and multiple defendants in that matter before the Judge and it was all predicated, and as the evidence in this case shows that there was an international movement among international labor unions, if you will understand the meaning that I am placing on that, representing seamen throughout the world and, particularly, American seamen.

And that movement was advertised, as the evidence shows in this case, through the media of information, the trade journals of the union and the union members, that a four-day protest would be staged against this practice of vessels being and carrying what seems to be in the vernacular runaway flags; in other words, meaning that by subterfuge the true ownership and the true nationality of a vessel was disguised by having her registered and carrying the flag of some foreign country. And there seems to have been three countries that had been picked out that appear to be utilized by these so-called runaway flagships being under the Panamanian flag, Costa Rica, I believe, and, as we are deal-

ing here, primarily, Liberia, or the Liberian flag.

Now, I have reached the conclusion that in determining the relationship of these parties that what flag any given bottom carries is not of importance. The question is: Who are the true owners, the true operators and the true charterers of any given vessel upon any given voyage? If it should develop that the owners, operators, or charterers are engaged in some sort of a conspiracy or some sort of activity that tends to relieve them of their true obligation of dealing collectively with bargaining agents of American seamen, then the American seaman has had a wrong committed against him. If, on the other hand, the true ownership and the true operator or the true charterer of any given vessel on any given voyage is purely foreign, is not in a position, in any event, to deal collectively with any bargaining agent representing any American seaman, the American seamen have no complaint; they are not in the market.

As this Court pointed out yesterday, there were—at least, according to the Shipping News—two Japanese vessels being worked by the servicing agencies within the port without any difficulty. So the question was and it now resolves to determine whether or not the owner of this vessel involved is in truth and fact American or United States ownership which has devised a plan which would tend to defeat or to relieve them of their duty to bargain collectively with any given bargaining agent of any group of American seamen. Secondly: Is there a labor dispute either within the meaning of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., or Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., or Oregon's Little Norris-LaGuardia Act, ORS 662.010 et seq.? If there is a labor dispute, then the jurisdiction of this Court with reference to injunctive matters and labor disputes is greatly restricted and this Court acknowledged that.

If, on the other hand, there is no labor dispute, then this Court is obliged to determine whether or not either under common law or under State law or, perhaps, Federal law, whether or not these individuals who have placed themselves in the vicinity of the dock where the ship is berthed and attempted to have been loaded have violated some wrong against the owners, the operators and the charterers of the vessel involved.

Now, the first plaintiff indicated is a corporation of Panama. There is no direct showing in the evidence as to who the stockholders of this corporation are, neither on behalf of plaintiff nor on behalf of the defendants who were required to show cause.

■■ Now, this Court has found it takes judicial knowledge of the laws of Panama, and is bound to take the presumption or the inference, at least, that all business transactions had are bona fide and in due course.

■ The second plaintiff in the case is a German corporation who is the charterer of the vessel on this given voyage. Evidence shows that she came here under ballast and that she was to be stowed with a cargo of barley to be delivered to a port in Germany. There seems to be no quarrel, no contention made by the defendants that any of the stockholders of the German corporation are of American nationality. The evidence shows that the operator of the vessel is a corporation of England, or, at least, an organization of some type in England with its office in London. And the testimony of the mate and the master of the vessel indicate that the principals of that corporation or organization, whatever it be, are of Greek nationality. The crew of this vessel on this voyage are of Greek nationality with the exception of one, the radio operator, who is an Englishman.

The crew and the officers some two months ago signed Articles of the voyage at Rotterdam. And the only testimony or evidence before the Court is that those Articles were in conformity with the laws of Greece and that the wage scale and the conditions, working conditions, of the officers and the crew were in conformity with the wages and working conditions established by the labor unions of Greece.

Now, there is no showing as to who the stockholders of this English organization or corporation are other than the oral testimony of these two officers that they were of Greek nationality. One other thing: The testimony shows that this vessel's keel was laid and she was launched and built in Japan some two years ago. The record is absolutely devoid of any evidence on behalf of any of the parties that she was ever owned by American interests, that she was ever chartered by American interests, or that she was ever operated by American interests with the one exception of the evidence of the port husband agent here in Portland who was hired, as he said, by wire, I think, or telegraph, some instructions from London.

So I am content to find on the record before me that this vessel is a foreign vessel; that she is owned, she is controlled, that she is operated by an entire foreign interest; that no American nor national of the United States has any interest in this voyage other than the sellers of the cargo.

Therefore, unlike the New York case, this Court is content to hold that this vessel is not a runaway flag; that she is operating when she came to this port under treaty approved by Congress; that there was no competition, and that there was no market for any American seaman as a member of her crew.

■ Now comes the question as to whether or not there is a labor dispute. Now, in the New York case the defendants were content to say that they were picketing and the Judge in his opinion in several instances refers to picketing or protest. In this case the defendants insist that there is no picketing; that this is just merely a protest.

Somehow they heard about it and after members of the union had talked about it they asked for volunteers and some volunteers—the volunteers, some of whom are defendants, properly served and before this Court appeared at the dock and in the vicinity where the vessel is berthed, and simulataneous or practically so with the appearance of these protesters carried banners that they protested the ship and the working conditions and wages paid officers and crew, all servicing agents, marine servicing agents in the Port of Portland refused to have anything to do with this vessel.

Since this occurred she has been moored at the dock, she is unable to move, she is unable to be loaded. For all practical purposes she is a dead ship.

Now, the defendants in their evidence claim that they have no labor dispute with any of the crew members nor with the owners of the vessel. There have been no demands made, there has been nothing sought by way of collective bargaining; they just simply appeared and *ipso facto* the vessel, for reasons they do not know why, became a dead ship.

I cannot find from any of the evidence in the case that there was any active conspiracy between any of the defendants before this Court to prevent the loading of this vessel; yet, on the other hand, this Court does find that members of the union appeared wearing banners in protest and that other members of other unions ceased and desisted in performing their ordinary duties in connection with servicing and working the vessel in the port. So I find from the evidence that there is no labor dispute existing between any of the unions and its members before this Court.

■ I further find that this Court has jurisdiction of the parties on diversity. I further find that under the allegations and testimony it is true the defendants

248

say that this protest is only going to last four days and I believe it's today or tomorrow which would be the fourth day. But as Judge Bryan pointed out in his case, it may be four days or it may be longer. The evidence in this case shows that since the time this vessel has not been worked she is suffering damages at the rate of $1,500 a day, plus being assessed by reason of the fact that under a tariff adopted by one of the port facilities by reason of her failure to be worked or to be loaded she is being assessed $100 an hour for not removing herself from the dock.

So I find that this Court has jurisdiction under the $10,000 jurisdictional limitation. So it necessarily follows this Court having jurisdiction of the parties and its jurisdictional amount having been met that there is no labor dispute between these parties; that the action of the party defendants before this Court has prevented and has been an interference on the contractual rights of this vessel, her charterer, her owners and her operators with other parties. And while I have sympathy for the position of the defendants that if the owners of this vessel had in some wise at one time been obliged to deal with these American seamen under our standards and then sought by a subterfuge to evade that, this Court would be one of the first to grant those American seamen such relief as it could, but this Court has found otherwise. And the only one that has been harmed in this transaction by reason of the activity of the defendants served and before this Court has been those defendants themselves.

I am constrained to say that, perhaps, they picked the wrong vessel in this case. So it will follow that a temporary injunction as prayed for in Plaintiffs' Prayer No. 2 as to the defendants before this Court and any parties acting in concert in connection with or under their direction shall be enjoined from committing the activities complained of from and after 12:00 Meridian today.

Counsel for plaintiffs may submit findings and appropriate order.